Jerald MEDLOCK, Jr., as Personal Representative of the
Estate of Glenda Kay Mitchell  *v.*  Michelle MITCHELL, as Personal
Representative of the Estate of George Richard Mitchell

CA 05–891                                          234 S.W.3d 901

Court of Appeals of Arkansas
Opinion delivered May 3, 2006

*Walters, Hamby & Verkamp*, by: *Michael Hamby*, for appellant.

*Christian & Byars*, by: *Joe D. Byars, Jr.*, and *Eddie Christian, Jr.*, for appellee.

JOSEPHINE LINKER HART, Judge. This is a contest over the validity of the will and amendments to the declaration of trust of George Richard Mitchell (Richard). Richard's widow, Glenda Kay Mitchell (Kay), died during the pendency of the action below, and her son, appellant Jerald Medlock, was appointed personal representative of her estate. Jerald brings this appeal from an order of the Sebastian County Circuit Court finding that the 2003 will and amendments to the trust proffered by Kay were the product of undue influence while the 1998 will proffered by appellee Michelle Mitchell was valid. Michelle is Richard's daughter and was appointed executrix of his estate. Jerald raises two points on appeal, arguing that the trial court erred in applying the presumption of undue influence and that, even if the trial court correctly applied the presumption of undue influence, Jerald showed by a clear preponderance of the evidence that there was no undue influence. We disagree and affirm.

Richard Mitchell executed a will on August 20, 1998, leaving his estate equally to two of his five children, Mark and Michelle.[1] Richard and Kay were married on December 28, 1998. The will appointed Michelle and Kay as co-executrixes. On the same day, Richard created a revocable living trust, with himself as trustee and the primary beneficiary of the trust. The trust was to terminate ten years after Richard's death. Upon termination of the trust, the corpus was to be distributed to Mark and Michelle. Michelle and Kay were named as successor co-trustees. The trust declaration also contained a "no contest" clause. On August 9, 2000, Richard amended the trust to name Kay as the sole first successor trustee. If Kay was unable or unwilling to serve, or if she resigned or was removed, Michelle was to be named successor trustee in her place.

In March 2003, Richard was diagnosed with terminal lung cancer. On June 30, 2003, Richard executed another will, leaving his entire estate to Kay. The will specifically stated that it made no provision for any of Richard's children and named Kay as execu-

---

[1] The will specifically stated that no provisions were being made for three of Richard's children, Richard Mitchell, Michael Mitchell, or Robert Mitchell. Richard had adopted Michael and Robert, the children of his ex-wife, Beverly Mitchell. Richard and Beverly were divorced in 1989.

trix. Richard amended the declaration of trust on July 8, 2003, to provide that, upon termination of the trust, Michelle was to receive $10,000 and a condominium, and the remaining assets were to be transferred to Kay. During the ten years after Richard's death, the trust was to pay Kay $2,500 per month for her support and $200 per month for Michelle's support. The trust was also amended to specifically provide that Mark was not to benefit from the trust.

Richard died on August 10, 2003. On December 1, 2003, Michelle filed a petition seeking to probate the August 20, 1998, will. She also asserted that she was named coexecutrix and sought to be appointed personal representative of the estate. The petition alleged that the value of the estate was in excess of $3,500,000. On January 6, 2004, Kay responded to Michelle's petition, alleging that the 1998 will had been revoked by a will dated June 30, 2003. Kay also filed a petition on that day seeking to have the June 30, 2003 will admitted to probate and to be appointed sole personal representative of the estate. Kay's response and petition both alleged that the trust established in August 1998 had been modified on June 30, 2003, and contained a "no contest" provision. Michelle responded to Kay's assertions, alleging that the June 30, 2003, will was invalid because of Richard's incompetence at the time of its execution and further that it was the product of undue influence or fraud. She also objected to Kay's appointment as personal representative. On February 1, 2005, Michelle filed a supplemental petition for declaratory judgment that the July 2003 amendment to the declaration of trust was likewise void and invalid.

At trial, numerous witnesses testified for both sides. Jerald, in arguing for the validity of the 2003 will and amendments to the trust, relied on statements Richard made to Kay and to his attorneys that he was disappointed in Mark and Michelle, as well as his desire to see that Kay was provided for. The disappointment in Mark resulted from statements Kay made Kay also held powers of attorney limited to two specific investment accounts. to Richard that Mark had wanted Richard removed from life support; that he had broken into Richard's home and office; that he had stolen $10,000 from Richard; and that he had made sexual advances towards Kay. Richard was also said to have been upset to discover that Mark was sharing information about Richard's finances with his mother. Richard's disappointment with Michelle stemmed

from her problems with drugs and alcohol, a lesbian relationship she had, and her inability to hold a job or manage money.

Michelle argued that the 2003 will and trust amendments were the product of undue influence exercised by Kay, which, according to Michelle, was shown by the dramatic changes in Kay's relationship with Richard's children after Richard was diagnosed with cancer. These changes include Kay's statement that she wanted the will changed; her false accusations about Mark to Richard; her presence in the hospital room when Richard discussed the changes to the will and the trust declaration with his attorneys; her presence when both the will and the trust amendments were executed; and her holding Richard's general power of attorney.[2]

The trial court issued a letter opinion, finding that a confidential and fiduciary relationship existed between Richard and Kay, resulting in a rebuttable presumption of undue influence. The court noted that the burden of establishing that the new beneficiary did not take advantage of the confidential relationship rests with Jerald as the proponent of the 2003 will and trust amendments and must be established by a clear preponderance of the evidence. The court then concluded that Jerald did not rebut the presumption of undue influence as a result of the confidential and fiduciary relationship between Richard and Kay. Judgment was entered on May 13, 2005, and a timely notice of appeal followed.

Jerald raises two points on appeal: that the trial court erred in finding that a confidential relationship existed between Richard and Kay and that the relationship gave rise to a presumption of undue influence and, further, even if the trial court correctly found that a confidential relationship existed between Richard and Kay, the trial court erred in finding that Jerald did not rebut the presumption.

We review probate cases de novo, but we will not reverse the decision of the probate court unless it is clearly erroneous. *Dillard v. Nix*, 345 Ark. 215, 45 S.W.3d 359 (2001). Due deference will be given to the superior position of the probate judge to determine the credibility of the witnesses and the weight to be accorded their testimony. *Wells v. Estate of Wells*, 325 Ark. 16, 922 S.W.2d 715 (1996).

---

[2] Kay also held powers of attorney limited to two specific investment accounts.

In his first point, Jerald argues that the trial court erred in finding a confidential relationship between Richard and Kay that can give rise to a presumption of undue influence. He argues that the factors cited by the trial court in its order do not establish a confidential relationship. Rather, according to Jerald, the cited factors show a normal relationship between a husband and wife. However, our supreme court has indicated that the relationship between a husband and wife is a confidential relationship, which, when coupled with other facts, can trigger a presumption of undue influence. *Dunn v. Dunn*, 255 Ark. 764, 503 S.W.2d 168 (1973). A confidential relationship also arises between a person who holds power of attorney and the grantor of that power. *Dent v. Wright*, 322 Ark. 256, 909 S.W.2d 302 (1995). It is undisputed that Kay held Richard's power of attorney. Jerald argues that the power of attorney Kay held was limited to two investment accounts. This ignores the testimony of attorneys James Pierce and Kelly Pierce that Richard executed a broad, durable general power of attorney in favor of Kay prior to the execution of the 2003 will or trust amendments.

Whether two individuals have a confidential relationship is a question of fact. *See Lucas v. Grant*, 61 Ark. App. 29, 962 S.W.2d 388 (1998); *Savage v. McCain*, 21 Ark. App. 50, 728 S.W.2d 203 (1987). We cannot say that the trial court clearly erred in finding under the facts of the case that a confidential relationship existed between Kay and Richard, either because of their confidential relationship as husband and wife and Richard's terminal illness or because Kay had Richard's durable power of attorney. It is the combination of both confidential relationships that gives rise to a presumption of undue influence in the present case. We affirm on this point.

In his second point, Jerald argues that, even if this court agrees that a confidential relationship existed between Richard and Kay, he successfully rebutted the presumption. Whether a will was procured by undue influence is a question of fact for the trier of fact. *Jones v. Balentine*, 44 Ark. App. 62, 866 S.W.2d 829 (1993); *Carpenter v. Horace Mann Life Ins. Co.*, 21 Ark. App. 112, 730 S.W.2d 502 (1987). The test to determine whether a will is the product of undue influence is the same for a trust that takes effect, in part, at death. *Noland v. Noland*, 330 Ark. 660, 956 S.W.2d 173 (1997); *Rose v. Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984).

It is not enough that a confidential relationship exist in order to void a testamentary instrument; there must be a malign influence resulting from fear, coercion, or any other cause which deprives the testator of his free agency in disposing of his property. *Pyle v. Sayers*, 344 Ark. 354, 39 S.W.3d 774 (2001); *Hodges v. Cannon*, 68 Ark. App. 170, 5 S.W.3d 89 (1999). Undue influence on a testator may be inferred from the facts and circumstances. *Looney v. Estate of Wade*, 310 Ark. 708, 839 S.W.2d 531 (1992); *Orr v. Love*, 225 Ark. 505, 283 S.W.2d 667 (1955). First, we consider the fact that Richard was in the hospital in a weakened state at the time the 2003 instruments were prepared. This could indicate undue influence. *Pyle, supra.* According to Michelle, during Richard's hospitalization, Kay indicated that she wanted Richard's will changed, suggesting that Kay was the driving force behind the changes. *Dunn, supra.* By her own testimony, Kay admitted to being present when Richard discussed the will and amendments to the trust with the Pierces, another possible sign of undue influence. *See In re Estate of Garrett*, 81 Ark. App. 212, 100 S.W.3d 72 (2003). She was also present at the execution of the will and the trust amendments, another factor indicating undue influence if other factors are present. *Estate of Brock*, 692 So. 2d 907 (Fla. App. 1996); *see also Rose v. Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984).

A will may also be invalidated for undue influence under certain circumstances where a person makes false statements and accusations to a testator concerning the natural objects of his bounty. *In re Estate of Accomazzo*, 492 P.2d 460 (Ariz. App. 1972); *Allee v. Estate of Sigears*, 182 S.W.3d 772 (Mo. App. 2006); *see also Allison v. Stroh*, 231 Ark. 862, 333 S.W.2d 737 (1960). Here, the trial court specifically found that Kay's statements to Richard that Mark broke into the office and wanted Richard taken off of life support precipitated the changes to the will and trust made in June and July 2003.

■ In arguing that he rebutted the presumption of undue influence, Jerald relies almost exclusively on the testimony of Kay and attorney Kelly Pierce concerning Richard's statements about the reasons why he did not want to leave Mark and Michelle anything. Cases involving undue influence will frequently depend on the credibility of witnesses and, as stated above, we give due deference to the superior position of the trial judge to determine the credibility of the witnesses and the weight to be accorded their testimony. *Pyle, supra.* We cannot say that the trial court was clearly

erroneous when it found that Jerald had not rebutted the presumption of undue influence.

Affirmed.

ROBBINS and GLOVER, JJ., agree.