

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-13-603

| | |
|---|---|
| JEANNE SIMPSON HARBUR | **Opinion Delivered** February 19, 2014 |
| APPELLANT | |
| | APPEAL FROM THE CRITTENDEN |
| | COUNTY CIRCUIT COURT |
| V. | [NO. PR-2012-47] |
| | |
| | HONORABLE LARRY B. BOLING, |
| SARAH SHELTON O'NEAL and JOHN | JUDGE |
| CARTER SHELTON | |
| APPELLEES | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Appellant Jeanne Simpson Harbur appeals the March 14, 2013 declaratory judgment of the Crittenden County Circuit Court in favor of appellees Sarah Shelton O'Neal and John Carter Shelton ("Carter"). Jeanne argues that the circuit court failed to accommodate her hearing disability; improperly shifted the burden of proof to her related to undue influence regarding the trust amendments; erred in invalidating the May 2, 2011 trust amendment; erred in failing to recognize the handwritten documents from August 2011 as valid trust amendments; and committed reversible error in its assessment of her credibility in failing to address her hearing disability.[1] We affirm.

The basis of this appeal is the Josephine Young Simpson Revocable Trust that was executed on March 6, 2004, by Josephine Young Simpson. Mrs. Simpson had two

---

[1]Because of the close connection, this last point on appeal will be addressed within the discussion of Jeanne's first point on appeal.

SLIP OPINION

daughters, Sarah Ann "Sally" Simpson Shelton and Jeanne. On February 2, 2011, Sally passed away unexpectedly. Immediately upon the death of Sally, her husband, David Shelton, and daughter, appellee Sarah, asked Mrs. Simpson to sign over to them certain HH bonds, which had been purchased by Mrs. Simpson and had both Mrs. Simpson's and Sally's names on them. Mrs. Simpson chose not to sign over the bonds at that time, and according to Jeanne, when David learned that Mrs. Simpson would not sign the bonds, he tried to change her mind, and a confrontation ensued.

Mrs. Simpson executed a power of attorney ("POA") on May 2, 2011, which allowed Jeanne to sign checks paying Mrs. Simpson's bills. Also on May 2, 2011, Mrs. Simpson signed a purported amendment to the trust that provided that, rather than Jeanne and Sally acting as co-trustees in the event of Mrs. Simpson's death or inability to continue serving, Jeanne alone would serve as trustee. It is undisputed that both the POA and the May 2, 2011 trust amendment were typed by Jeanne. The POA and trust amendment were witnessed and notarized by employees of Broadway Health Care ("BHC"), the nursing home where Mrs. Simpson resided.

In June 2011, Carter went to BHC with Martha Hunt, an employee of Fidelity National Bank, to supervise Mrs. Simpson signing over the HH bonds. According to Ms. Hunt, Mrs. Simpson told Ms. Hunt that she wanted the proceeds of the bonds to be deposited into her checking account. At some point after the funds were deposited into Mrs. Simpson's account, the value of the bonds was disbursed by two checks to Sarah and Carter, but neither admit to being the one who gave the checks to Mrs. Simpson to sign.

At Jeanne's next visit with her mother in early August 2011, she reviewed her mother's financial statements with her. Jeanne said that it was brought to Mrs. Simpson's attention that the checks had been written and that her signature appeared on them. Although she was insistent that she had not signed the checks, there is no dispute that it is Mrs. Simpson's signature on the checks and that Mrs. Simpson could not see very well.

On August 9, 2011, after Jeanne had returned to Missouri, Mrs. Simpson handwrote two documents, purporting to create a holographic will in which she stated that she wished that all her assets be given to Jeanne. On November 11, 2011, Mrs. Simpson signed a trust amendment that was typed by Jeanne but contained the exact words handwritten by Mrs. Simpson in the August 2011 documents.

Mrs. Simpson passed away in Crittenden County, Arkansas, on February 8, 2012. After Mrs. Simpson's death, Sarah filed her request to probate a will that Mrs. Simpson had executed in 2004, and to appoint Sarah as personal representative of Mrs. Simpson's estate. Sarah and Carter then filed a petition for declaratory judgment requesting that the circuit court strike the purported May and November 2011 trust amendments.

The petition for declaratory judgment proceeded to trial. The circuit court determined that because of the existence of the POA and because Jeanne had been helping her mother with her finances, a confidential relationship existed, which shifted the burden of proof to Jeanne to prove beyond a reasonable doubt that Mrs. Simpson had the mental capacity and free will to execute the 2011 trust amendments. The circuit court found that

Jeanne failed to do so in its letter ruling dated January 10, 2013, and formalized in the March 14, 2013 declaratory judgment. A timely notice of appeal was filed on April 11, 2013.

I. *Failure to Accommodate Jeanne's Hearing Disability and Effect on Credibility*

Appellant's first issue of whether the circuit court failed to accommodate her alleged hearing disability was not raised in the circuit court and will not be considered. In Arkansas, it is a well-settled rule that issues not raised or ruled on in the circuit court will not be considered for the first time on appeal. *Parker v. Advanced Portable X-Ray, LLC*, 2014 Ark. App. 11, __ S.W.3d __. At no time did Jeanne or her counsel complain that Jeanne's hearing was so poor that she needed accommodation by the circuit court. In giving her testimony, she was responsive to the questions put to her by attorneys on both sides. The testimony indicates that on the few occasions where Jeanne complained that she had some difficulty hearing the question, the question was repeated and answered by her. This is a common practice in court proceedings, and it appears that everyone involved provided the relief requested by Jeanne.

Appellant also argues that she might not have been able to follow the testimony of others as they testified, which would have made her unable to effectively interact with her counsel regarding the testimony being given by others. If that occurred, the problem was not brought to the attention of the circuit court so that the circuit court had an opportunity to address the situation. Jeanne even acknowledges her inaction with respect to this issue in her brief. Accordingly, this issue is not preserved for this court's review.

4

Likewise, in her final point on appeal, Jeanne submits that the circuit court's silence on the issue of her obvious hearing disability negatively affected the circuit court's assessment of her credibility. She argues that some remedy is required to protect her due- process rights. We note that there is no evidence that Jeanne's alleged hearing disability had any effect on the circuit court's assessment of her credibility, but as with the previous discussion in this point, this issue was not raised in the circuit court and will not be addressed. *Parker, supra.*

## II. *Burden of Proof Shifted to Jeanne Regarding Undue Influence*

The capacity required to create, amend, revoke, or add property to a revocable trust is the same as that required to make a will. Ark. Code Ann. § 28-73-601 (Repl. 2012). "The test to determine whether a will is the product of undue influence is the same for a trust that takes effect, in part, at death." *Medlock v. Mitchell*, 95 Ark. App. 132, 136, 234 S.W.3d 901, 905 (2006). Ordinarily, the party challenging the validity of a will is required to prove by a preponderance of the evidence that the testator lacked mental capacity or was unduly influenced at the time the will was executed. *Bell v. Hutchins*, 100 Ark. App. 308, 268 S.W.3d 358 (2007). But in a case where a beneficiary procures the making of a will, a rebuttable presumption of undue influence arises that places on the beneficiary the burden of proving beyond a reasonable doubt that the testator enjoyed both required mental capacity and freedom of will. *Pyle v. Sayers*, 72 Ark. App. 207, 34 S.W.3d 786 (2000).

Jeanne claims that, regarding the May 2, 2011 trust amendment, no evidence was offered by anyone that suggested that Mrs. Simpson was mentally incompetent at the time the amendment was signed. She notes that the mental capacity of the maker of a trust or

5

deed is presumed and it falls to the contestants to prove incapacity by a preponderance of the evidence. *Rose v. Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984). Jeanne argues that the presence of the presumption of undue influence does not negate the presumption of mental capacity. *Id*.

The requisite level of mental capacity to create a trust is defined as having "sufficient mental capacity to retain in his memory, without promptings, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom." *Rose*, 284 Ark. at 46, 679 S.W.2d at 182. The definition of "undue influence", on the other hand, is influence "such as results from fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property." *Rose*, 284 Ark. at 45, 679 S.W.2d at 182.

Jeanne notes that Carter admitted that Mrs. Simpson's mental capacity was excellent in May 2011, and that Sarah testified she did not start to wonder about her grandmother's mental capacity until October 2011. Accordingly, Jeanne claims that there is no basis for a finding that Mrs. Simpson was not mentally capable of executing the May 2011 trust amendment.

Jeanne submits that leaves only undue influence as a means available to Sarah and Carter to invalidate the May 2011 trust. Jeanne acknowledges that, because of the rebuttable presumption, she had the burden of moving forward and producing evidence to rebut this presumption. But she claims that the burden of proving the undue influence by the preponderance of the evidence remained on Sarah and Carter, *see Rose*, *supra*, and she

6

SLIP OPINION

maintains that no evidence was offered that, in May 2011, Mrs. Simpson was either in fear of Jeanne or felt coerced by her in any way. To the contrary, Sarah and Carter testified that their grandmother felt Jeanne was "a bit of a flake" and that she did not count on her and would roll her eyes when talking about Jeanne. She maintains that this is hardly the way one would expect her to speak about someone of whom she was afraid.

Jeanne argues that there can be no undue influence without evidence of malign intent. She maintains that Sarah and Carter rely simply on the belief that the burden to disprove undue influence beyond a reasonable doubt is so high that no evidence to support the circuit court's finding is required—basically asking the court to deem it an irrebutable presumption. Jeanne notes that even if the court chooses to believe that Jeanne engaged in a course of conduct designed to cause her mother to leave all of her assets to her, that still does not support a finding of undue influence.

We hold that the circuit court did not improperly shift the burden of proof to Jeanne on this issue. Where a beneficiary procures the making of a trust, a rebuttable presumption of undue influence arises and the burden of proof then shifts to the proponents of the trust to prove beyond a reasonable doubt that the trustor had both the mental capacity and freedom of will to render the trust legally valid. *Pyle, supra.* The same rebuttable presumption of undue influence arises when the beneficiary has a fiduciary and/or confidential relationship with the maker of a will or trust such as the relationship between a person who holds power of attorney and the grantor of that power. *Medlock, supra.*

First, the circuit court found that there was a confidential relationship between Jeanne and Mrs. Simpson based on Jeanne's testimony that (1) beginning in 2004, she supervised Mrs. Simpson's financial affairs; (2) Mrs. Simpson had limited vision and could see and read only large- size print and writing; (3) Jeanne drafted the trust dated March 6, 2004, for Mrs. Simpson's signature; (4) Jeanne drafted her will dated April 8, 2004, for Mrs. Simpson's signature; and (5) Jeanne's management and supervisory control of Mrs. Simpson's financial affairs increased after Mrs. Simpson broke her hip in 2009 and entered BHC. Because of this confidential relationship between Jeanne and Mrs. Simpson, a rebuttable presumption of undue influence arose, which shifted the burden of proof to Jeanne to prove that Mrs. Simpson had both the mental capacity and freedom of will when she executed the two trust amendments. *Medlock*, *supra*.

The circuit court also found that there was a fiduciary relationship between Jeanne and Mrs. Simpson, with Jeanne owing a fiduciary duty to Mrs. Simpson by reason of the durable POA dated May 2, 2011, which was executed by Mrs. Simpson and appointed Jeanne as her attorney in fact, and because of the supervisory control that Jeanne had over Mrs. Simpson's financial affairs. That fiduciary relationship also gave rise to a rebuttable presumption of undue influence by Jeanne over Mrs. Simpson, which also shifted the burden of proof to Jeanne to prove that Mrs. Simpson had both the mental capacity and freedom of will when she executed the two trust amendments. *Medlock*, *supra*.

Regarding procurement of the trust amendments, Jeanne testified that after her sister Sally's death, she discussed with Mrs. Simpson changes to be made to the trust, and that Mrs.

8

Simpson requested that Jeanne prepare an amendment to the trust that would make Jeanne the sole trustee upon Mrs. Simpson's death and Jeanne's daughter, Katherine Wessling, the successor trustee in the event Jeanne was unable or unwilling to serve as trustee. Jeanne prepared and typed the first trust amendment and presented it to Mrs. Simpson for her signature, which she signed on May 2, 2011.

In its extensive letter opinion, the circuit court found that Jeanne procured the first trust amendment dated May 2, 2011, based on the facts that Jeanne had performed every step of obtaining information, preparing the document, producing the document, and finalizing the document, and had also benefitted from the amendment. Because Jeanne procured this trust amendment, a rebuttable presumption of undue influence arose and the burden of proof then shifted to Jeanne to prove beyond a reasonable doubt that Mrs. Simpson had both the mental capacity and freedom of will at the time she executed the trust amendment. *Pyle*, *supra*.

Jeanne testified that she also prepared for Mrs. Simpson's signature the second trust amendment dated November 11, 2011. This trust amendment made Jeanne the sole beneficiary of the trust upon Mrs. Simpson's death, and made Jeanne's children sole beneficiaries of the trust if Jeanne did not survive Mrs. Simpson. The circuit court found that Jeanne procured the second trust amendment based on the facts that Jeanne performed every step of obtaining information, making decisions on information received, preparing the document, producing the document, and finalizing the document as the second trust amendment, and that Jeanne and her child benefitted from the second trust amendment. We

hold that the circuit court's ruling shifting the burden of proof to Jeanne with regard to the two amendments to the trust is supported by overwhelming evidence—including but not limited to Jeanne's own testimony.

## III.   *Invalidity of May 2, 2011 Amendment*

In bench trials, the standard of review on appeal is not whether there is substantial evidence to support the finding of the court, but whether the judge's findings were clearly erroneous or clearly against the weight of the preponderance of the evidence.  *Baptist Health v. Murphy*, 2010 Ark. 358, 373 S.W.3d 269.  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the firm conviction that a mistake has been committed.  *Machen v. Machen*, 2011 Ark. 531, 385 S.W.3d 278.  The appellate court will reverse a probate court's determination on the questions of mental capacity and undue influence only if they are clearly erroneous, giving due deference to the superior position of the trial court judge to determine the credibility of the witnesses and the weight to be accorded their testimony.  *Simpson v. Simpson*, 2014 Ark. App. 80, __ S.W.3d __; *Pyle*, *supra*.  Whether a trust was procured by undue influence is a question of fact for the trier of fact.  *Medlock*, *supra*.  Undue influence on a testator may be inferred from the facts and circumstances.  *Simpson*, *supra*.

Jeanne claims that in this case, the credibility of the witnesses was the basis of the circuit court's decision to invalidate the May 2, 2011 trust amendment.  The circuit court found that where the testimony of Jeanne or her four disinterested witnesses differed from what she describes as the self-serving testimony of Sarah and Carter, Sarah's and Carter's

testimony was more credible. Jeanne claims, however, that the testimony of appellees actually conflicts with the circuit court's findings on this point.

By their own admission, Sarah and Carter testified that any concerns they had with Mrs. Simpson's mental capacity did not begin until October 2011, which, Jeanne notes, was after Mrs. Simpson told Sarah that she and Carter "had gotten everything from her that they were going to get." Jeanne claims that they actually avoided offering any such evidence to prove Mrs. Simpson was incompetent because the circuit court might have reasoned that when they had Mrs. Simpson sign over the bonds in June, they were taking advantage of someone with competency issues. Accordingly, Jeanne maintains that the circuit court's finding that Mrs. Simpson lacked mental capacity and/or freedom of will to amend her trust on May 2, 2011, must rely only on the belief that she lacked the freedom of will to amend.

Sarah and Carter submitted to the circuit court the durable POA that was signed on May 2, 2011, by Mrs. Simpson. The witnesses to the durable POA and the witnesses to the May 2, 2011 trust amendment were the same. The circuit court relied on the POA as evidence to establish a confidential relationship existed between Mrs. Simpson and Jeanne, and further that this relationship was the reason the circuit court shifted the evidentiary burden to Jeanne. Jeanne argues that it is logically inconsistent for the circuit court to conclude that Mrs. Simpson was acting of her own free will in signing a document which gave Jeanne the authority to handle her financial affairs and at the exact same time find that Jeanne was unduly influencing Mrs. Simpson into signing a trust amendment that did not transfer any assets or benefit Jeanne in any material way. She urges that acceptance by the

circuit court of the validity of the durable POA should have estopped the circuit court from finding that the May 2, 2011 trust amendment is invalid.

Based upon the previously discussed finding that there was a fiduciary and confidential relationship between Jeanne and Mrs. Simpson, and that Jeanne procured the two amendments to the trust, the burden of proof shifted to Jeanne to prove beyond a reasonable doubt that Mrs. Simpson had both the mental capacity and freedom of will at the time she executed the amendments to her trust. The circuit court found that not only had Jeanne failed to overcome the rebuttable presumption of undue influence and failed to meet the burden of proof, but also that there was sufficient evidence before it for the circuit court to find that Jeanne exerted undue influence over Mrs. Simpson in the execution of the two trust amendments even in the absence of a presumption of undue influence.

Evidence indicates that each of Jeanne's visits with Mrs. Simpson in 2011 coincided with Jeanne obtaining information to prepare or obtain Mrs. Simpson's signature on documents to change the distribution of the assets of the trust following Mrs. Simpson's death, each benefitting Jeanne and/or her children. Additionally, after Sally's death in February 2011, there were several occasions where Jeanne's influence on Mrs. Simpson's decision to amend her trust was obvious or could at least be inferred by the circuit court—including evidence that every expression of frustration or concern with Sarah and Carter's side of the family made by Mrs. Simpson coincided with Jeanne's visits.

It was right after Jeanne's August 2, 2011 visit that Mrs. Simpson wrote out the two holographic wills declaring that "the Shelton family has already received their share of my

assets," and giving all of her assets to Jeanne. There was no evidence presented that Sarah, Carter, or the Shelton family had received any of Mrs. Simpson's assets, other than the $57,000 from the HH Bonds, which had been in the joint names of Sally and Mrs. Simpson, far less than one-half of Mrs. Simpson's estate. Evidence supports that Mrs. Simpson did not understand the extent of her wealth when she wrote out the two proposed holographic wills. Additionally, Mrs. Simpson attempted to make a will with the two holographic documents, but Jeanne decided instead to amend the trust, not a will.

Evidence supports the circuit court's conclusion that Mrs. Simpson's relationships with Sally, David, Sarah, and Carter were strong and positive prior to Sally's death and the initiation of an increased, focused influence by Jeanne. Sally visited Mrs. Simpson at BHC at least three times a day, every day, feeding her three meals, washing her clothes, changing diapers, accompanying her on trips to the doctor, and participating with her in activities at BHC. Sarah had a close relationship with Mrs. Simpson until after Sally's death. Several witnesses, including Jeanne and her witnesses, testified that Carter had a very loving relationship with Mrs. Simpson and that she held him in high regard.

Conversely, Jeanne played no role in the personal care of Mrs. Simpson, merely handling the financial affairs. Prior to Sally's death, Jeanne would visit her mother three to four times a year, staying only one night. All of the personal care for Mrs. Simpson was left to the supervision of Sally and her immediate family. Jeanne did not relieve Sally from the care of her mother long enough for Sally to attend her son's wedding in Kansas City. Even after Sally's death, Jeanne's role in the care of Mrs. Simpson remained related to her financial

13

affairs. Moreover, evidence indicates that Jeanne kept Sarah off of the list at BHC for individuals authorized to obtain information concerning Mrs. Simpson, preventing Sarah from obtaining information and providing adequate care for Mrs. Simpson.

The circuit court reviewed all of the testimony and other evidence in this case and issued a comprehensive letter opinion, including ten pages of findings fact and conclusions of law on which the opinion was based. We find no error in the circuit court's finding that Jeanne failed to rebut the presumption of undue influence, nor proved beyond a reasonable doubt that Mrs. Simpson had both the mental capacity and freedom of will at the time she executed the alleged May 2, 2011 trust amendment.

IV. *Failure to Recognize the Handwritten August 2011 Documents as Trust Amendments*

Finally, we find no merit in Jeanne's lengthy argument in support of her assertion that the circuit court erred in failing to recognize the two August 2011 documents written by Mrs. Simpson as trust amendments. The parties stipulated that the two handwritten documents were not controlling as to the disposition of the assets at issue in this case, and this particular issue was not raised at trial and will not be considered by this court. *Parker, supra.*

Affirmed.

VAUGHT and HIXSON, JJ., agree.

*Jeannie Harbur*, pro se appellant.

*Durrett and Coleman*, by: *Chadd L. Durrett, Jr.*, for appellees.