SLIP OPINION

Cite as 2016 Ark. App. 86

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV–15–168

| | |
|---|---|
| | **Opinion Delivered** February 10, 2016 |
| LIBERTY BANK OF ARKANSAS, AS SUCCESSOR TRUSTEE OF THE VERNON E. ARNOLD REVOCABLE TRUST<br><br>APPELLANT<br><br>V.<br><br>CLYDE E. BYRD, JR., EXECUTOR OF THE ESTATE OF ARDELLIA D. BYRD ARNOLD, DECEASED<br>APPELLEE | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. CV-2013-201]<br><br>HONORABLE WILLIAM M. PEARSON, JUDGE<br><br>AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

**RITA W. GRUBER, Judge**

Liberty Bank of Arkansas (the bank), as successor trustee of the Vernon E. Arnold Revocable Trust, appeals from an order of the Pope County Circuit Court imposing a constructive trust on the trust's assets in favor of appellee Clyde Byrd, Jr. Byrd cross-appeals from the circuit court's award of attorney's fees to the bank from assets subject to the constructive trust. We affirm on direct appeal and on cross-appeal.

I. *Facts and Procedural History*

Vernon Arnold and Ardellia "Hollye" Arnold were married in 1981. There were no children born of the marriage, but each party had one child from a previous marriage. By

all accounts, Vernon and Hollye got along well together during their marriage. When Hollye's health began to fail, Vernon provided good care and treatment for her. During their marriage, Hollye transferred some of her separate personal and real property to Vernon and herself as joint tenants with right of survivorship. These jointly held assets eventually had an accumulated value of approximately $1 million. Additionally, Hollye owned another $1 million in separate, premarital assets.

In 2004 and in 2008, Hollye executed durable powers of attorney naming Vernon as her attorney-in-fact. She also executed a durable health-care power of attorney in favor of Vernon in September 2009.

In August 2012, Vernon created the Vernon E. Arnold Revocable Trust (the trust) that he funded by using the powers of attorney to transfer the parties' jointly held real property, as well as personal property, to his trust. The trust instrument provided that, following Vernon's death, all of the trust income and any needed principal were to be used for Hollye's care for the remainder of her life. Any balance of the trust assets after Hollye's death was to be paid to the remainder beneficiaries.[1] The bank was designated as successor trustee to manage and expend the trust assets necessary to provide continued care to Hollye. Hollye was incapacited at the time in a nursing home.

Vernon Arnold died on February 25, 2013; Hollye died one week later, on March 4, 2013.

_____

[1]The specific bequests were $100,000 to Byrd; $100,000 to Vernon's son, Doug Arnold; $25,000 to Byrd's child, Kyle; $5,000 to First Presbyterian Church; and the balance to Doug Arnold's two children, Jacob Arnold and Eric Crowley.

On May 3, 2013, Byrd filed a petition seeking to have Hollye's will, executed in 2004, admitted to probate.[2] In her will, Hollye bequeathed her individual assets to Byrd if Vernon should predecease her. In the petition, Byrd requested that he be named executor of Hollye's estate. On May 16, 2013, an order was entered admitting the will to probate and appointing Byrd as executor.

On August 5, 2013, Byrd, as Hollye's executor, filed suit against the bank as successor trustee of the trust, asserting causes of action for breach of fiduciary duty, the cancellation of Vernon's conveyances to the trust, and the imposition of a constructive trust on the assets in Vernon's trust. The basis for the claims was the assertion that Vernon had a fiduciary duty to act on Hollye's behalf and had breached that duty by using her powers of attorney to transfer their joint assets to the trust. According to Byrd, if Vernon had not conveyed all of the assets to the trust, those assets would have passed to Hollye as the surviving joint tenant and then to Byrd under the terms of Hollye's will. Byrd later amended his complaint to add claims for unjust enrichment; a claim for damages to Hollye based on the bank's failure to distribute trust income to Hollye in accordance with the terms of the trust; and claims of breach of a confidential relationship, undue influence, fraud, and lack of consideration. The bank answered, denying the material allegations of the complaint and its amendments.

Jacob Arnold, one of the trust beneficiaries, filed a petition to intervene, stating that if Byrd's suit was successful, it would defund the trust and deprive him of his interest in the trust. Arnold was allowed to intervene, and he filed an answer to Byrd's complaint that

---

[2]Vernon's will, which was never probated, left all of his property to the trust, to be distributed according to the trust instrument.

largely mirrored the bank's answer. Arnold also filed a third-party complaint against Byrd, individually, contending that if Byrd is successful in his lawsuit, he would control all the assets in the trust and be unjustly enriched by also owning the joint portion of Vernon's assets that are to go to other heirs. He requested an equitable lien on all trust assets Byrd receives as Hollye's heir.

The case proceeded to a bench trial. In its order, the court found that Hollye came into the marriage with premarital assets in excess of $1 million, contributing approximately 80% of the household income during the marriage with her investments and retirement income. The court found that Hollye's testamentary intent was that Vernon was to be provided for with the survivorship accounts but to otherwise leave all of her property to Byrd. The court also found that Hollye was incapacitated by the time of her admission to a nursing home in late 2010. The court found that Vernon had both a fiduciary duty to Hollye and a confidential relationship with her, which he violated when he conveyed ownership of real property, investment accounts, and CDs held as joint tenants with right of survivorship to the trust. Vernon's funding of the trust with jointly held assets was found to be contrary to Hollye's estate plan and the intent set forth in her powers of attorney and did not destroy Hollye's rights of survivorship in those assets. The court found that a presumption of undue influence was raised because of Vernon's confidential relationship with his wife, coupled with the durable powers of attorney, Hollye's lack of capacity, and his control of her financial affairs. The court found that the presumption was not rebutted by the bank or by Arnold. Based on the finding that Vernon had breached his fiduciary duty, the court imposed a constructive trust on the trust assets in favor of Byrd as Hollye's

executor. The court denied Jacob's third-party complaint because Vernon had predeceased Hollye, who became the sole owner of the assets upon Vernon's death. The court ordered each party to pay its own attorney's fees.

The bank filed a posttrial motion for additional findings relating to its continuing duty to manage and invest the trust assets. The motion asked the court to specify a date for the transfer of the trust assets. The motion also sought confirmation that the attorney's fees and expenses that had previously been paid from the trust assets had been properly deducted from the trust corpus prior to any transfer. Byrd responded, arguing that the bank assumed the risk of litigation. He also asserted that the court had already addressed the issue when it ruled that each party was to bear its own attorney's fees and expenses.

Following a hearing on the bank's posttrial motion, the circuit court entered a supplemental order directing that the trust's balance as of the date of trial, less actual taxes, trustee fees, and expenses, be transferred on September 8, 2014. The court also held that the attorney's fees and expenses already paid by the bank were reasonable and necessary fees and expenses incurred by the trustee. This timely appeal and cross-appeal followed.

## II. *Standard of Review*

The exclusive jurisdiction in cases involving trusts, and the construction, interpretation, and operation of trusts are matters within the jurisdiction of the courts of equity. *Rose v. Rose*, 2013 Ark. App. 256, 427 S.W.3d 698; *Winchel v. Craig*, 55 Ark. App. 373, 934 S.W.2d 946 (1996). Arkansas appellate courts have traditionally reviewed matters that sounded in equity de novo on the record with respect to factual and legal questions. *Rose*, *supra*; *In re Ruby G. Owen Trust*, 2012 Ark. App. 381, 418 S.W.3d 421. A finding by

a circuit court in an equity case will not be reversed unless it was clearly erroneous. *Cason v. Lambert*, 2015 Ark. App. 41, 454 S.W.3d 250.

### III. *Arguments on Direct Appeal*

On appeal, the bank argues that the circuit court erred by (1) finding that Byrd, as executor of Hollye's estate or individually, had standing to present a claim for fraud on Hollye's marital rights; (2) shifting the burden of proof to the bank to establish by clear and convincing evidence the validity of the jointly held assets to the trust; (3) computing the respective financial contributions of Vernon and Hollye to their marriage; (4) finding that Vernon breached his fiduciary duty to Hollye in transferring assets to the trust; and (5) imposing a constructive trust on the trust's assets.

The bank first argues that Byrd lacked standing, either individually or as Hollye's executor, to bring the action for fraud on Hollye's marital rights. We disagree because the circuit court found that Byrd had standing to bring the action under the Uniform Power of Attorney Act. Arkansas Code Annotated sections 28-68-116(a)(5) and (a)(6) (Repl. 2012) grant standing to review the conduct of an agent under a power of attorney to a person who would qualify as a presumptive heir of the principal or to any person named as a beneficiary to receive any property upon the principal's death. Byrd has standing under both sections because he is Hollye's only heir and was named as a beneficiary under her will. The bank does not discuss the court's ruling on standing under section 28-68-116. An argument not raised by the appellant in its brief cannot be considered by this court on appeal. *Vickers v. Freyer*, 41 Ark. App. 122, 129, 850 S.W.2d 10, 13 (1993).

We discuss the bank's second, third, and fourth points together because there cannot be a discussion of one point without discussing certain aspects of the other points. It is undisputed that the parties were in a fiduciary relationship: a person who holds a power of attorney is an agent, and "a fiduciary relationship exists between principal and agent in respect to matters within the scope of the agency." *Dent v. Wright*, 322 Ark. 256, 261, 909 S.W.2d 302, 304 (1995). Also, in certain circumstances a presumption of undue influence may arise in connection with the execution of a deed. *See Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999) (gift to the dominant party in a confidential relationship). Here, Vernon used the powers of attorney to transfer ownership of the marital residence held as tenants by the entirety to his trust. The same rebuttable presumption of undue influence arises when there is a relationship between a person who holds power of attorney and the grantor of that power. *See Harbur v. O'Neal*, 2014 Ark. App. 119, at 7, 432 S.W.3d 651, 657. Undue influence may also be inferred from the circumstances. *Id*. Thus, the circuit court did not improperly shift the burden of proof to the bank to establish the validity of the transfer of jointly held assets to the trust.

The bank argues that the evidence shows that Vernon intended for the trust to provide for Hollye's care for the remainder of her life. However, his intent for the jointly held assets during Hollye's lifetime is not the issue; rather, it is his intent for the disposition of those assets after Hollye's death that is dispositive.

The Uniform Power of Attorney Act provides that an agent *shall* attempt to preserve the principal's estate plan, to the extent actually known by the agent. Ark. Code Ann. § 28-68-114(b)(6). It is undisputed that Vernon knew the details of Hollye's estate plan. The

2008 power of attorney provided that Vernon, as Hollye's agent, could execute a trust instrument with dispositive provisions identical to Hollye's existing 2004 will. The 2008 power of attorney also specifically provided that Vernon could not use his authority to amend, alter, or revoke Hollye's will. *See also In re Estate of Garrett*, 81 Ark. App. 212, 218, 100 S.W.3d 72, 76 (2003). However, the trust instrument provided that upon Hollye's death, the jointly held assets were to be disposed of according to *Vernon's* estate plan, not *Hollye's* plan. Thus, the circuit court correctly found that Vernon's actions were contrary to Hollye's testamentary intent and plan.

The bank's argument that Vernon, as a co-owner of the jointly held assets, had the authority to make such transfers misses the point: Vernon could not destroy the joint tenancy in either the real or personal property by his unilateral actions. A spouse's right of survivorship in real property can only be dissolved by a divorce proceeding, death, or the voluntary action of *both* parties. *Butcher v. Beatty*, 2010 Ark. 13; *Lowe v. Morrison*, 289 Ark. 459, 711 S.W.2d 833 (1986). Moreover, even though one has a right to withdraw funds from a joint bank account, a joint tenant may not, by withdrawing funds in a joint tenancy, acquire ownership to the exclusion of the other joint tenant, *see Dent*, 322 Ark. at 262, 909 S.W.2d at 305, and when one withdraws in excess of his moiety, he is liable to the other joint tenant for the excess withdrawn. *Id*. at 263, 909 S.W.2d at 305. Hollye's interest as the surviving tenant in the funds continued even after Vernon conveyed the jointly held real property and investment funds to the trust. *South v. Smith*, 326 Ark. 774, 934 S.W.2d 503 (1996). Upon Vernon's death, Hollye, as the surviving joint tenant, became entitled to all of the jointly held assets that Vernon had transferred to the trust. *Id*.; *Miller v. Riegler*, 243

Ark. 251, 419 S.W.2d 599 (1967). Because the assets were jointly held with right of survivorship, it is unnecessary to discuss the bank's argument concerning the circuit court's computation of Vernon's and Hollye's relative financial contributions during the marriage.

Finally, the bank argues that the circuit court erred in imposing a constructive trust on the jointly held assets held in Vernon's trust. The bank argues that there is no valid reason for imposition of a constructive trust because Vernon's undisputed intent was to provide for Hollye's needs during her life. However, as discussed above, that intent was irrelevant. Moreover, Vernon's ownership in the jointly held property terminated at his death. *South*, *supra*. Thereafter, his trust could hold that property only for Hollye's benefit, and a constructive trust was an appropriate remedy. *Id*.

IV. *Arguments on Cross-Appeal*

On cross-appeal, Byrd argues that the court erred in awarding fees to the bank from the trust assets upon which it had imposed a constructive trust. We believe that this misconstrues what actually happened and the circuit court's ruling.

In its final order, the circuit court ordered each party to bear its own attorney's fees and costs. The bank filed a motion for additional findings in which it asked the court "to confirm that the trustee's fees, charges, and expenses, including attorney's fees incurred [up to trial] may be properly deducted from the trust corpus upon which the constructive trust was imposed." Byrd responded, arguing that the bank had assumed the risk of litigation and that the bank had consistently ignored Byrd's claims to property that the bank asserted was an asset of the trust. The court held a hearing on the motion. At that hearing, it was pointed

out that the bank had already paid its attorneys.[3] In an order, the court found that the attorney's fees were reasonable and necessary expenses incurred and paid by the bank as trustee.

Citing *Taylor v. Woods*, 102 Ark. App. 92, 282 S.W.3d 285 (2008), Byrd argues that the circuit court erred in awarding fees to the bank because the bank was not the "prevailing party." However, the reliance on *Taylor* is misplaced. In *Taylor*, we did indeed include this language: "[p]rior to awarding attorney's fees, the circuit court must determine which party, if any, prevailed on the merits of the case as a whole." 102 Ark. App. at 107, 282 S.W.3d at 295–96. This was in rejecting the appellant's argument that the circuit court should have awarded her fees for each discrete issue within the case. As authority, we cited *Perry v. Baptist Health*, 368 Ark. 114, 243 S.W.3d 310 (2006). However, *Perry* was a contract case where attorney's fees were awarded under Arkansas Code Annotated section 16-22-308. This is obviously not a contract action; therefore, section 16-22-308 and its requirement of a "prevailing party" is inapplicable. The circuit court recognized this at the hearing on the posttrial motion.

The circuit court ruled that the fees were reasonable and necessary expenses of the trustee. Byrd does not address the court's actual ruling. Therefore, we have no basis on which to reverse. *Vickers*, *supra*.

Affirmed on direct appeal; affirmed on cross-appeal.

WHITEAKER and HOOFMAN, JJ., agree.

*Peel Law Firm, P.A.*, by: *John R. Peel* and *Dustin K. Doty*, for appellant.
*Richard F. Hatfield, P.A.*, by: *Richard F. Hatfield*, for appellee.

---

[3]The total attorney's fees and costs paid by the bank was $44,824.71.