2010 Ark. App. 277

**James Walter BRECKENRIDGE, Appellant**

v.

**Marvin Eugene BRECKENRIDGE and Estate of James F. Breckenridge, Deceased, Appellees.**

**No. CA 09–1035.**

Court of Appeals of Arkansas.

March 31, 2010.

Danny Wayne Glover, Glover, Roberts & Dooley, Wynne, for Appellant.

Ralph Myers, III, McCrory, for Appellees.

M. MICHAEL KINARD, Judge.

James Walter Breckenridge appeals from a decision of the circuit court admitting a will executed by his deceased father, James F. Breckenridge, in August 2008 into probate. On appeal, appellant argues that 1) the trial court erred in not applying the presumption that the will was executed under undue influence; 2) if the presumption does not apply, the circuit court erred in finding that the will was not executed under undue influence and that the testator had testamentary capacity at the time the will was executed; and 3) the doctrine of inconsistent positions precludes Marvin Eugene "Gene" Breckenridge from taking the position he did before the circuit court. We affirm the order of the circuit court.

James Walter and Gene are the two adult children of James F. Breckenridge (the testator). In 1970, the testator executed a will naming his wife, Lucille Breckenridge, as the beneficiary of his estate, with his sons to receive an equal share of the estate in the event Lucille predeceased him. Lucille Breckenridge did, in fact, predecease the testator. In 2007, the testator was diagnosed with prostate cancer. In January 2008, the testator executed a document granting power of attorney to James Walter. In February 2008, Gene and Gene's girlfriend, Robin Toney, moved into the testator's home to take care of him. In May 2008, Gene filed a petition to be appointed guardian of the testator's estate. A temporary order was entered setting aside the power of attorney. James Walter and Gene informally agreed that Gene would act as guardian until a third party was established as guardian of the estate. No formal guardianship was ever established. On August 18, 2008, the testator executed a second will. In the second will, the testator gave James Walter $100 and devised the remainder of his estate to Gene and Robin Toney, with each to receive an equal share.

The testator passed away on August 27, 2008. On September 12, 2008, Gene filed a petition requesting that the 2008 will be admitted into probate. On October 9, 2008, James Walter filed a response in which he challenged the admission of the

2008 will based upon lack of testamentary capacity by the testator and the exercise of undue influence upon the testator by Gene. In support of his challenge to the 2008 will, James Walter attached an affidavit executed by Rita Allbright, M.D., in which Dr. Allbright stated that she performed an evaluation of the testator on May 19, 2008, and gave her opinion that the testator was an incapacitated person. Also on October 9, 2008, James Walter filed a petition requesting that the testator's 1970 will be admitted into probate.

A hearing on the parties' competing petitions was held before the circuit court. At the hearing, the testator's brother, B.J. Breckenridge, testified that he was present on August 18, 2008, when the testator executed his second will. He testified that Gene was not in the room when the will was executed. He further testified that the testator was of sound mind when the will was executed. B.J. also testified that James Walter had mistreated the testator by placing a mortgage on the testator's home and then lying to the testator about the mortgage. B.J. also stated that he was in favor of Gene being appointed guardian of the estate.

The 2008 will was prepared by attorney Ralph Myers III, who represented Gene at the hearing. Myers's assistant, Subrena Thompson, testified that she prepared the will for the testator on August 18, 2008, from notes prepared by Myers. Thompson also testified that neither Gene nor Robin Toney were in the room when the will was executed. Thompson stated that she saw no signs of any undue influence upon the testator at the time the will was executed.

Peteresia Frymire McDonald, who was a nurse at Legacy Hospice, testified that every time she came to the testator's home, he knew her name. When she was in the testator's home on August 13, 2008, he was aware of the day of the week and the month, but not the exact day of the month. The testator's mental condition was the same on August 15, 2008. McDonald admitted on cross–examination that she had discussed her opinion that the testator was forgetful at times with other hospice workers. On August 18, 2008, McDonald arrived at the testator's home when Myers and Thompson were leaving. She testified that the testator's condition was the same as it had been previously and that she saw no indication of undue influence. According to McDonald, as of his hospice admission date, the testator was taking oxycodone, which is a narcotic pain medication; aspirin; ibuprofen; and Phenergan, which was prescribed for nausea. Theresa Hanson, another nurse with Legacy Hospice, testified that on August 12, 2008, the testator was "forgetful and confused." Lasonya Davis, a licensed social worker employed by Legacy, gave her opinion that the testator could execute a will.

John Bell, an attorney, testified that he prepared the petition for guardianship that Gene filed in May 2008. Bell testified that he believed that the testator was not competent to revoke the January 2008 power of attorney on May 1, 2008. According to Bell, when he spoke with the testator in May 2008, the testator did not know his entire address, did not know any digit of his social security number, and did not know what month it was. Bell testified that the testator's condition worsened between May and June 2008. Bell testified that he was not present on August 18, 2008, when the second will was executed, and that he could not testify as to whether the testator had testamentary capacity on that date. Bell stated that in 2007, the testator's home was mortgaged for $75,000, and that the proceeds from the mortgage loan were given to James Walter

so that he could retrieve his home from bankruptcy.

Dr. Rita Allbright testified that, during her examination of the testator in May 2008, the testator displayed moderate dementia and had difficulty with his short-term memory. As a result of her examination, Dr. Allbright opined that the testator was incapacitated. Dr. Allbright testified that she did not know what the testator's mental condition was on August 18, 2008.

Gene testified that when he began to look into the testator's financial records after moving in with him, he became convinced that James Walter was taking advantage of the testator. Gene stated that he claimed his father was incapacitated in May 2008 in order to have the power of attorney granted to James Walter revoked. He testified that the testator called Myers personally and met with him regarding the will. Gene stated that he was not in the room while the testator and Myers discussed the will. Gene denied having any input into the contents of the 2008 will and stated that he was also not in the room when the will was executed. Gene gave his opinion that the testator was not incapacitated in August 2008.

James Walter testified that the testator never complained about his handling of the testator's finances until after Gene moved in with him. James Walter denied hiding anything from the testator and testified that the testator looked at his bank statements every month. According to James Walter, it was the testator's idea to take out a mortgage on his home and use the proceeds to purchase James Walter's home out of bankruptcy. James Walter testified that he made the payments on the mortgage loan from December 2006 until June 2008, when, according to him, Gene stopped the monthly bill from coming to him.

In a letter opinion filed March 19, 2009, the circuit court found that Gene did not procure the August 2008 will. The circuit court determined that both James Walter and Gene had confidential relationships with the testator. The circuit court also found that the testator had testamentary capacity on August 18, 2008, and that the will was not the result of undue influence. The letter order was incorporated by reference into an April 8, 2009 order admitting the 2008 will into probate. James Walter filed a timely notice of appeal on April 30, 2009.

Appellant is challenging the circuit court's admission of the 2008 will into probate. We review probate proceedings de novo; however, we will not reverse the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Graham v. Matheny*, 2009 Ark. 481, 346 S.W.3d 273. Appellant's first point on appeal is that the circuit court erred by failing to apply a presumption of undue influence by Gene due to the confidential relationship between Gene and the testator. Appellant's second point on appeal is that, whether relying upon the existence of a presumption that the will was a result of undue influence or not, the evidence demonstrates that the will was a result of undue influence and that the testator lacked testamentary capacity when the will was executed. Because these two points are so intertwined, we will consider them together.

The existence of a confidential relationship between a primary beneficiary and a testator gives rise to a rebuttable presumption of undue influence. *Medlock v. Mitchell*, 95 Ark.App. 132, 234 S.W.3d 901 (2006). If a confidential relationship exists, the beneficiary and proponent of the will is required to prove by a prepon-

derance of the evidence that he did not take advantage of the relationship such that the will was the product of undue influence and not the result of the testator's own volition. *Id.* In its order, the circuit court correctly noted that procurement of the will by a beneficiary results in a presumption of undue influence as well. *See Bell v. Hutchins,* 100 Ark.App. 308, 268 S.W.3d 358 (2007). The circuit court found that Gene did not procure the will, and that finding is not challenged on appeal.

■■■ Although the circuit court found that a confidential relationship existed between the testator and both of his sons and the circuit court did not expressly state that it applied the presumption of undue influence, we hold that the circuit court's finding that the will was not obtained as a result of Gene's undue influence is not clearly erroneous because the preponderance of the evidence supports that finding. It is not enough that a confidential relationship exists in order to void a testamentary instrument; there must be a malign influence resulting from fear, coercion, or any other cause which deprives the testator of his |₇free agency in disposing of his property. *Medlock,* 95 Ark.App. at 137, 234 S.W.3d at 905. The testator personally contacted the attorney who drafted the will, discussed the terms of that will with the attorney in person, and approved and executed the will outside of the presence of either Gene or Robin Toney. There is no evidence of coercion that would indicate that the will was not a reflection of the testator's intent at the time the will was drafted.

■■■ Appellant argues that the unnatural disposition of the testator's property in the will indicates that the will was executed as a result of undue influence. However, there was evidence presented that, at the time the will was executed, the testator was upset with James Walter regarding his management of the testator's financial affairs. A testator has the legal right to dispose of his or her property in any manner that he or she sees fit, even if the disposition might appear on its face to be unnatural or inequitable, so long as such disposition expresses the will of the testator. *See Dunklin v. Black,* 224 Ark. 528, 275 S.W.2d 447 (1955). Therefore, although the circuit court did not expressly discuss the presumption of undue influence, the preponderance of the evidence in this case supports the finding that the will was not executed as a result of undue influence upon the testator by Gene.

■■■ Testamentary capacity has been defined as the ability on the part of the testator to retain in memory without prompting the extent and condition of property to be disposed of, to comprehend to whom he is giving it, and to realize the deserts and relations to him of those whom he excludes from his will. *Hiler v. Cude,* 248 Ark. 1065, 1076, 455 S.W.2d 891, 897–98 (1970). In support of his argument that the testator lacked testamentary capacity, appellant relies upon the testator's weak physical condition at the time the will was executed and the proximity of the execution of the will to his passing, as well as the testimony of Dr. |₈Allbright and John Bell. In finding that the testator had testamentary capacity, the circuit court expressly relied upon the testimony of the hospice caregivers and Subrena Thompson, all of whom interacted with the testator on or about the day that the will was executed, while Dr. Allbright and John Bell both stated that they could not testify regarding the testator's mental state on the day the will was executed. A testator's age, physical incapacity, and partial eclipse of mind will not invalidate a will if he has the requisite testamentary capacity when the will is executed, also known as a

lucid interval. *Pyle v. Sayers,* 72 Ark.App. 207, 34 S.W.3d 786 (2000), *aff'd,* 344 Ark. 354, 39 S.W.3d 774 (2001). In finding that the testator experienced a lucid interval at the time the will was executed, the circuit court was allowed to credit the testimony of the witnesses who saw the testator on the day the will was executed. The circuit court's finding that appellant had testamentary capacity at the time of the will's execution is not clearly erroneous and is affirmed.

 Appellant's final point on appeal is that Gene is prohibited by the doctrine against inconsistent positions from asserting that the testator had testamentary capacity at the time the will was executed because Gene asserted in his guardianship petition that the testator did not have the capacity to manage his estate. The doctrine of inconsistent positions, more commonly referred to in recent case law as the doctrine of judicial estoppel, prevents a party litigant from availing himself of inconsistent positions in litigation concerning the same subject matter or from playing "fast and loose" with the court. *Dupwe v. Wallace,* 355 Ark. 521, 140 S.W.3d 464 (2004).

In *Dupwe,* the supreme court set out the elements necessary for *a prima facie* case of judicial estoppel:

1. A party must assume a position clearly inconsistent with a position taken in an earlier case, or with a position taken in the same case;

2. A party must assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage;

3. A party must have successfully maintained the position in an earlier proceeding such that the court relied upon the position taken; and

4. The integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken.

*Dupwe,* 355 Ark. at 525–26, 140 S.W.3d at 467. We are not persuaded that Gene's position in this case is clearly inconsistent with his position in the guardianship case. As stated above, testamentary capacity only applies at the time that the will is executed. The day-to-day management of an estate is, by contrast, an ongoing and ever-present obligation. Therefore, it is conceivable that a person could lack the ability to make decisions regarding his estate such that would require the appointment of a guardian of the estate, yet experience a lucid interval during which that person would possess testamentary capacity. Because appellant has failed to establish the first element of judicial estoppel, the doctrine does not apply in this case.

Affirmed.

GLADWIN and GLOVER, JJ., agree.