Cite as 2021 Ark. App. 260

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV-20-363

| | |
|---|---|
| JOHN A. HAVERSTICK AND JERRY HAVERSTICK | **Opinion Delivered** May 26, 2021 |
| APPELLANTS | APPEAL FROM THE WOODRUFF COUNTY CIRCUIT COURT [NO. 74PR-18-25] |
| V. | |
| FRANCES HAVERSTICK | |
| APPELLEE | HONORABLE CHALK S. MITCHELL, JUDGE |
| | AFFIRMED |

## BART F. VIRDEN, Judge

Brothers, John Haverstick ("John Jr.") and Jerry Haverstick, filed a motion to set aside the Woodruff County Circuit Court's order admitting the will of their father, John Haverstick ("John Sr.") , to probate and appointing their stepmother, Frances Haverstick, as the personal representative of the estate. Frances filed a motion to dismiss John Jr. and Jerry's motion to set aside. The circuit court granted Frances's motion to dismiss, and the brothers appeal the circuit court's decision. We affirm.

## I. *Relevant History*

John Sr. died on May 2, 2018. John Sr.'s will, executed on October 20, 2015, named Frances, John Jr., and Jerry as heirs and nominated Frances as the administrator of the estate. John Sr.'s estate mainly consisted of a $400,000 Farm Bureau annuity, and it set forth that John Jr. and Jerry would receive $10,000 each in proceeds from the annuity, and Frances would receive the balance of the annuity proceeds and the remaining estate. On May 21,

Frances petitioned the Woodruff County Circuit Court for probate of the will and requested that the court appoint her as the personal representative of the estate. The order granting the petition was entered the same day, and the testamentary letter was entered on May 23.

On July 15, 2018, John Jr. and Jerry filed a motion to set aside the order probating the will and appointing Frances as the personal representative of the estate, and in the same motion they contested the will. The brothers argued that the petition for probate and for appointment of a personal representative was neither signed by the petitioner nor verified as required by Arkansas Code Annotated section 28-1-109(a) (Repl. 2012). Moreover, they argued, section 28-1-109(b) requires that notice of the hearing on the petition must be given to each named heir and/or devisee who has filed a demand for notice. The brothers conceded that neither of them had filed a demand for notice; however, they argued that they were not served in accordance with either section 28-1-109(a) or section 28-1-112 (Repl. 2012), and the court did not have jurisdiction over the case. As for their will contest, the brothers asserted that section 28-40-117 (Repl. 2012) provides that an attested will shall be proved by the testimony of at least two witnesses, and no proof of will was filed. Also, John Jr. and Jerry called into question the validity of their father's signature on the will. The brothers requested that the court invalidate the will and remove Frances as the representative. Additionally, the brothers requested that the circuit court set aside paragraph five of the will, which provides that the estate is the beneficiary of the proceeds of the annuity worth $400,000. They contended that the annuity's beneficiary designations could

be changed in accordance with the provisions of the annuity and could not be changed through a will.

On July 16, Frances responded, explaining that John Jr. and Jerry received letters advising them that their father's will had been admitted to probate.[1] She also contended that her failure to sign or verify the petition was being corrected, and the proof of will was attached to the will and filed in the circuit court. Additionally, Frances asserted that the beneficiary of an annuity may be changed "by direct reference to such change within the body of the will itself."

On January 17, 2019, John Jr. and Jerry amended their motion. In addition to the arguments in their original motion, the brothers recounted that in 1992, their father obtained the annuity worth $400,000 and later changed the terms in 2000, 2004, and 2005 through Bobby Bowen, a Farm Bureau insurance agent. Before the October 20, 2015 revision, Frances, John Jr., and Jerry were to receive one-third equal shares of the annuity. The brothers contended that in a deposition, Frances stated that John Sr. had asked her to call his attorney, Bay Fitzhugh, and make the appointment to revise his will and that he drove them to Fitzhugh's office; however, later Frances stated that she drove them to the appointment. The brothers asserted that Frances also testified that she was responsible for cleaning, bathing, and dressing their father at the time the will was changed. The brothers alleged undue influence, asserting that their father did not have the mental capacity to make

---

[1]Proof of publication of notice of the probate of John Sr.'s will was filed August 20 setting forth that the notice of probate ran on August 16.

3

the will, Frances had isolated John Sr. from his family and made him completely dependent on her, and she had hidden the changes to their father's will from both sons and his insurance agent and friend, Bobby Bowen. Frances responded with a motion to dismiss.

On November 8, 2019, the court held a hearing on the motions. Frances, a licensed practical nurse, described her relationship with John Sr. as loving and close. She testified that John Sr. was diagnosed with Parkinson's in 2013, and in that same year, she obtained a durable power of attorney. Parkinson's limited John Sr.'s driving ability as the disease progressed, and sometime after the 2015 will was executed, Frances began signing his name for him. Toward the end of John Sr.'s life, Frances took care of his bathing and cleaning and cooked his meals. She testified that her husband died in May 2018 from COPD, congestive heart failure, and chronic respiratory failure. Frances explained that her husband was never diagnosed with dementia or took medication for it and never showed the symptoms of dementia, except toward the very end of his life in 2017. Even then, Frances testified, he did not suffer from end-stage dementia, and up to his death, John Sr. knew everyone and could carry on a conversation. Frances recalled that in 2015, John Sr. complained that his sons never came to see him, and he expressed the desire to change his will. Frances testified that she told her husband that John Jr. and Jerry were busy with work and could not visit him, but John Sr. was determined to change his will. Frances recalled that her husband, who often asked her to place his phone calls, asked her to call his attorney and set up an appointment. She stated that John Sr. drove them to the appointment, and he went in the office and closed the door while she sat in the waiting room for about thirty

4

minutes and chatted with Patty, Fitzhugh's secretary. When Fitzhugh and John Sr. emerged from the lawyer's office, Fitzhugh asked Patty to find Bobby Bowen's phone number, and Fitzhugh called Bowen while she and John Sr. were still there. Frances stated that although she remembered that the call occurred, she did not hear the other side of the phone call and could not say who Fitzhugh was speaking to. Frances testified that a couple of days after the will was revised, Patty, who "must have" typed the will, called the Haversticks and told them that John Sr. needed to come back and sign the will. Frances testified she sat in the truck while her husband went inside and signed the will. She identified her husband's signature and explained that it had changed because he could hardly write due to Parkinson's.

Bay Fitzhugh testified that in October 2015, John Sr. came into his office for an appointment to discuss changes to his will, and during the appointment, Frances waited in the waiting room. John Sr. told Fitzhugh he wanted to revoke his will and change the distribution of the annuity, and Fitzhugh testified that John Sr. "made it clear to me that he understood the extent and nature of his property. Under my sworn oath, he absolutely told me what to do with his property." Fitzhugh recalled that Patty typed the will when they were finished and that it was signed that day, though he acknowledged that there "is an issue about whether or not he signed it on that day or another day" and later in his testimony stated that "I don't even know who typed this. I didn't. I may have had someone down at the bank type it." Then, Fitzhugh insisted that Patty typed the will, stating that there was no doubt in his mind that "she typed it up after my visit with John."

Sherry McGuen, who worked in the Woodruff County Clerk's office during the time the will was revised, testified that Fitzhugh came into the clerk's office to get a copy of John Sr.'s case file and he explained that "we didn't type this up in my office because my secretary has been out. Frances typed it up for me, and I don't have a copy of it."

Jerry testified that he loved his father, that they had a good relationship, and that his father had helped him out financially over the years. Jerry explained that his father did not like to talk on the phone and that he had Frances make phone calls for him. Jerry explained that during phone calls, Frances relayed his end of the conversation to John Sr. as they talked and vice versa. Counsel asked Jerry, "You heard Frances's testimony that he said that you all never came to see him?" Jerry replied, "Well, no. We were dealing with a lot. My mom's health wasn't good. My brother and I worked." Jerry explained his mom had been in hospice, his wife died in 2015 after a long illness, and "it is fair to say that during that period of time I was dealing with those issues with my wife, I wasn't able to see my family as much as I would have liked to."

John Jr. testified that he lived two blocks from his father in Augusta, and he and his father had a good, close relationship all his life. John Jr. testified that his communication with his father was "sporadic"—sometimes three or four times a week, sometimes not for weeks or a month because of work. John Jr. reiterated Frances's testimony that she took care of his father's daily needs toward the end of his life, and he was dependent on her.

Farm Bureau insurance agent Bobby Bowen testified that he had known John Sr. since the 1960s, and John Sr. was a client. Over the years, John Sr. made changes to the

annuity through Bowen. Bowen did not remember receiving a phone call in 2015 regarding the annuity, and he knew of no changes to the distribution until Frances came into his office after John Sr.'s death. Bowen testified that he gave her the claim form, but she refused to sign it, and afterward, Bowen called John Jr. and Jerry. Bowen stated that if the estate was the beneficiary of the annuity, then the will determined how to distribute the funds.

After all the testimony and evidence was presented, the circuit court stated that

[i]n terms of this relationship, I think they had a confidential relationship. She knew things that the sons didn't know. I don't think that was brought about because she tried to get him to confide in her or tell her things. He did it, that was his choice. There has been no proof that she tricked him or tried to cause him to change his will. He had the testamentary capacity to execute the will. I think from the attorney, there was testimony that he did. He talked about what's required under Arkansas law. This is a valid will, and I don't need to go further. There will probably be some additional questions about the interpretation of the will. That's not before the Court today. I'm going to dismiss your motion to set aside the order probating the will and appointing a personal representative.

COUNSEL:     What about my amended motion?

COURT:     In that you talk about undue influence?

COUNSEL:     Correct.

COURT:     I am making a specific finding that based on the facts, there was no undue influence in this case.

COUNSEL:     And the finding you found here is a confidential relationship between Mrs. Haverstick and the decedent?

COURT:     I'm not – confidential relationship. There is a relationship. Whether it's confidential, I'm not prepared based on the evidence to go that far.

On December 2, 2019, the court entered an order stating that the irregularities in the petition for probate and the order admitting the will to probate had been cured. The

court found that John Jr. and Jerry did not provide evidence that Frances had unduly influenced John Sr., and there was no evidence Frances had procured the will by dictating the contents of the will or directing the attorney. The court found that Fitzhugh's testimony proved that John Sr. had full knowledge of the extent of his property and knew how he wanted to bequeath such property, and John Jr. and Jerry presented no evidence to the contrary. Nor did John Jr. and Jerry present any evidence of Frances's engaging in "games of secrecy and deception with her husband" or that she had isolated him from his family, and none of the other allegations in the amended motion were proved by any standard of proof. The court found that the will was valid in all respects and granted Frances's motion to dismiss. Also, the circuit court found that John Jr. and Jerry's motion to set aside was denied and dismissed.

John Jr. and Jerry timely filed a notice of appeal pursuant to Ark. R. App. P. Civ. 2.[2]

II. *Discussion*

A. Jurisdiction

For their first point on appeal, John Jr. and Jerry assert that Arkansas Code Annotated § 28-40-110(b) (Repl. 2012) requires that they, as heirs and devisees, should have been given notice that a petition to probate the will and to appoint a personal representative of

---

[2]All orders in probate cases are appealable, except an order removing a fiduciary for failure to give a new bond or render an accounting required by the court or an order appointing a special administrator.

8

the estate was filed.[3]  John Jr. and Jerry argue that because the statutory notice requirement was violated, the circuit court did not have jurisdiction to admit the will to probate. We disagree.

Arkansas Code Annotated § 28-40-110 provides that

(a) If the petition for probate or for the appointment of a general personal representative is opposed, or if a demand for notice has been filed under the provisions of § 28-40-108, the court shall, and in all other cases the court may, fix a time and place for a hearing on the petition.

(b) Notice of the hearing shall be given by one (1) or more of the methods set out in § 28-1-112 to each heir and devisee whose name and address is given, including notice other than by publication to each person who has filed demand for notice.

John Jr. and Jerry did not file a demand notice pursuant to section 28-40-108(a)(1) (Repl. 2012).  Arkansas Code Annotated section 28-40-108(a)(1) requires that an interested party who desires to be notified before a will is admitted to probate or before a general personal representative is appointed may file a demand for notice with the clerk. Arkansas Code Annotated § 28-40-109 (Repl. 2012) further provides that upon filing the petition for probate or for the appointment of a general personal representative, if no demand for notice has been filed as provided in section 28-40-108, and if such a petition is not opposed by an interested person, the court in its discretion may hear the petition immediately or at such time and place as it may direct without requiring notice. Such is the case here. John Jr. and Jerry did not file a demand notice and did not oppose the will; thus, the court was

---

[3]John Jr. and Jerry do not appeal the circuit court's ruling that the inconsistencies in the petition for probate and the order admitting the will to probate had been cured.

not required to give them notice of Frances's petition or set a hearing on the petition. John Jr. and Jerry's arguments that Frances's petition did not state that it was unopposed and that it was likely that they would oppose Frances's appointment are not relevant to our analysis. There is no requirement that the petition declare that it is unopposed or that the likelihood of a challenge to the will or appointment must be considered; thus, John Jr. and Jerry's argument fails, and we hold that the circuit court had jurisdiction to admit the will to probate and appoint Frances the personal representative.

### B. Motion to Dismiss

For their second point on appeal, John Jr. and Jerry argue that the circuit court erred by granting Frances's motion to dismiss their motion to set aside. Specifically, the brothers contend that the circuit court erroneously failed to find that Frances and John Sr. had a confidential relationship; thus, the circuit court improperly shifted the burden to the brothers to prove that Frances exerted undue influence over John Sr. Also, John Jr. and Jerry contend that the circuit court impermissibly evaluated the witnesses' credibility when it determined that John Sr. was not unduly influenced. John Jr. and Jerry's arguments are not well taken.

First, we address John Jr. and Jerry's argument that the court erred by not finding that Frances and John Sr. had a confidential relationship. Frances concedes that she and John Sr. had a confidential relationship and that she bore the burden of proving that she did not exert undue influence over her husband. We agree. The relationship between a husband and wife is a confidential relationship, which, when coupled with other facts, can trigger a

10

rebuttable presumption of undue influence. *Medlock v. Mitchell*, 95 Ark. App. 132, 136, 234 S.W.3d 901, 905 (2006). A confidential relationship arises between a person who holds power of attorney and the grantor of that power. *Id.* When a confidential relationship exists, the burden is shifted to the proponent of the will to prove by a preponderance of the evidence that the will was not obtained by undue influence. *Breckenridge v. Breckenridge*, 2010 Ark. App. 277, 375 S.W.3d 651.

Frances and John Sr. had been together for thirty-eight years and married for thirteen years, and Frances held a power of attorney for John Sr. These facts give rise to the existence of a confidential relationship and the rebuttable presumption that Frances exercised undue influence over John Sr. In the order granting dismissal, the court did not find that a confidential relationship existed between Frances and John Sr., and it did not make a clear ruling on the matter at the hearing; however, the ambiguity of the court's decision does not require this court to reverse and remand the case, as the brothers contend. Though the circuit court's analysis of the confidential-relationship issue is unclear, as we discuss below, the court came to the right result in deciding that there was no evidence of undue influence, and it is axiomatic that the appellate court can affirm a circuit court if the right result is reached even if for a different reason. *Thomas v. Avant*, 370 Ark. 377, 383, 260 S.W.3d 266, 271 (2007); *Norman v. Norman*, 347 Ark. 682, 66 S.W.3d 635 (2002).

We now turn to John Jr. and Jerry's argument that the circuit court impermissibly shifted the burden of proving that undue influence occurred to them. As we discussed above, Frances and John Sr. had a confidential relationship, and it was her burden to prove that she

did not exert undue influence over her husband; thus, they argue, the circuit court erroneously applied the wrong standard in granting Frances's motion to dismiss.

This court reviews probate matters de novo but will not reverse findings of fact unless they are clearly erroneous. *Ashley v. Ashley*, 2012 Ark. App. 236, at 6, 405 S.W.3d 419, 423. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been committed. *Id.* This court must also defer to the superior position of the lower court sitting in a probate matter to weigh the credibility of the witnesses. *Id.*

The circuit court did not explicitly state that Frances bore the burden of rebutting the presumption of undue influence; however, under these facts this is not reversible error. In *Breckenridge*, 2010 Ark. App. 277, at 6, 375 S.W.3d at 656, our court held that though the circuit court did not expressly state that the proponent of the will had the burden of rebutting the presumption of undue influence, the evidence supported the court's finding that the testator was not unduly influenced. Likewise, here, the evidence supports the circuit court's finding that Frances did not exert undue influence over John Sr., and we affirm.

Undue influence is defined as "not the legitimate influence which springs from natural affection, but the malign influence which results from fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property." *Darr v. Billeaudeau*, 2018 Ark. App. 16, at 11, 541 S.W.3d 460, 466 (citing *McCulloch v. Campbell*, 49 Ark. 367, 5 S.W. 590 (1887)). When a rebuttable presumption of undue influence arises,

it creates a burden for the proponent of the will to prove beyond a reasonable doubt that the testator had both the testamentary capacity as well as the freedom from undue influence to execute a valid will. *Darr, supra*. Questions of testamentary capacity and undue influence are so interwoven in any case where these questions are raised that the court necessarily considers them together. *Id*. Where the evidence suggests that the testator possessed the mental capacity to execute a valid will, the evidence for undue influence must be stronger. *Id*. If the maker of a will has sufficient mental capacity to retain in his or her memory, without prompting, the extent and condition of her property and to comprehend how he or she is disposing of it, to whom, and upon what consideration, then the testator possesses sufficient mental capacity to execute the will. *Id*. The relevant inquiry is not the mental capacity of the testator before or after a challenged will is signed, but rather the level of capacity at the time the will was signed. *Id*. Testamentary capacity is the ability on the part of the testator to retain in memory without prompting the extent and condition of property to be disposed of, to comprehend to whom he is giving it, and to realize the deserts and relations to him of those whom he excludes from his will. *Breckenridge*, supra. Even though the testator is elderly, physically impaired, and evidence is presented that at some point he may have experienced dementia, that is not enough, on its own, to invalidate a will for lack of capacity. *Id*

Though Frances and others testified that John Sr.'s physical ability to take care of his daily needs like bathing, cleaning himself, and driving were limited or nonexistent at the time he changed his will, lack of physical ability does not invalidate a will. *See id*. Frances

testified that at the time of the 2015 revision to his will John Sr. independently wished to change his will because he believed that his sons did not come to see him enough or helped with his care. Frances testified that right up to his death her husband knew who everyone was and could converse with others. There was no evidence to the contrary requiring the court to determine credibility. Indeed, John Jr. and Jerry testified that they had been very busy with work and the declining health of other family members and had "sporadic" contact with their father. Everyone who testified about John Sr.'s care agreed that Frances alone tended to her husband's daily needs. Though there was conflicting testimony regarding whether Frances went into the office with John Sr., Bay Fitzhugh testified that John Sr. was fully aware of the extent and nature of his property. None of the testimony presented at the hearing contradicts Frances's or any witness's evidence that at the time of the will's revision, John Sr. had testamentary capacity. Moreover, there was no evidence contradicting Frances's and Fitzhugh's testimony that the will was not procured, and John Sr. made the changes without input from Frances. The conflicting testimony regarding who was in Fitzhugh's office during the revision and who typed the will does not contradict the testimony regarding John Sr.'s soundness of mind at the time of the revision or indicate that the will was procured. Our review of the record does not convince us that the circuit court erred in determining that there was no evidence of procurement, undue influence or "games of secrecy" or that the circuit court relied on an incorrect burden of proof, or that it improperly weighed credibility in this matter.

Affirmed.

14

MURPHY and BROWN, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellants.

*The Law Offices of Watson and Watson, PLLC*, by: *Tim Watson, Sr.*, and *Tim Watson, Jr.*, for appellee.