Cite as 2025 Ark. App. 418

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-24-20

| | | |
|---|---|---|
| JOSEPH MILES | | Opinion Delivered September 10, 2025 |
| | APPELLANT | APPEAL FROM THE DREW COUNTY CIRCUIT COURT |
| V. | | [NO. 22PR-21-22] |
| KIM GLADDEN | | HONORABLE QUINCEY ROSS, JUDGE |
| | APPELLEE | |
| | | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**STEPHANIE POTTER BARRETT, Judge**

Appellant Joseph Miles (hereinafter, "Miles") appeals the decision of the Drew County Circuit Court following its May 22, 2023 order denying Miles's petition for probate of Lisa Gladden Smith's (hereinafter, "Lisa's") will. Specifically, Miles argues (1) appellee Kim Gladden (hereinafter, "Gladden") failed to prove Miles unduly influenced the execution of Lisa's 2020 will; and (2) Gladden failed to prove Miles unduly influenced the execution of Lisa's 2018 will. We affirm the circuit court's order as to the 2018 will, and reverse and remand the 2020 will for a determination regarding whether undue influence was used regarding the confidential relationship between Miles and Lisa under a preponderance-of-the-evidence standard.

In August 2017, Miles began a relationship with Lisa, now deceased. At the time their relationship began, Lisa's mother had recently passed, and her father was in poor

health, eventually passing away in January 2018. Following her father's passing, Lisa began drinking heavily, leading to her own health issues.

In early 2018, Lisa retained counsel at Gill Law Firm, where attorney Kelly Brown guided Lisa through the process of drafting a will. Specifically, Lisa conferenced with Kelly about leaving her estate to Miles and one of her friends, Linda Sue Barnes. Lisa further questioned Kelly about her ability to change a life insurance beneficiary designation through a will, indicating she did not want any portion of her estate to go to her estranged brother, Gladden.

On October 19, 2018, Linda Sue, also Miles's friend and employee, found Lisa unresponsive in her home. Linda Sue did work and odd jobs for Miles at his rental properties and went to check on Lisa at Miles's direction. While Linda Sue testified that an unknown person came to Lisa's home to deliver IV fluids to her, the medical records from Baptist Hospital name Melissa Nash, Linda Sue's daughter, as the person who rendered the IV to Lisa. Three days later, on October 22, 2018, Lisa was admitted to the hospital for liver failure due to alcoholism and possible acetaminophen overdose. Following her admission to the hospital, Miles had Lisa execute a power of attorney naming him and Linda Sue as Lisa's attorney in fact—this was evidenced by three short video clips provided to the circuit court as exhibits 114(a)–(c). Lisa's attorney, Kelly Brown, emailed Miles several standard end-of-life documents, including a general power of attorney and a power of attorney for healthcare with a living will, which Lisa executed. These documents named Miles and Linda Sue as Lisa's healthcare proxies and attorneys in fact. Later that day, Lisa was transferred to

2

Baptist Health Hospital in Little Rock. After Lisa's transfer, Miles emailed Kelly requesting a last will and testament for Lisa. Miles stated Lisa wanted to leave all her assets to him and Linda Sue and to change the beneficiary of Lisa's life insurance from Suzie Flemister to him, Linda Sue, and Shady Grove Baptist Church of Monticello, Arkansas.

On October 24, 2018, Kelly visited Lisa at Baptist Health to have her execute the will; however, Lisa was "in and out of consciousness" and unable to do so. On October 29, Lisa's conditioned had improved and she was able to execute the will, referred to throughout the pleadings and herein as the "2018 Will." However, the terms of the will slightly differed from what Miles had previously communicated to Kelly. The 2018 Will left $100,000 of Lisa's life insurance proceeds to the Joyce Meyers Ministries and the rest of the proceeds to Miles. The 2018 Will left the residue of Lisa's estate to Miles or, in the alternative, Charlie Searcy, a friend of Lisa's, if Miles predeceased Charlie. The 2018 Will named Charlie as the personal representative of Lisa's estate. Kelly later testified that Lisa appeared to be of sound mind and under no duress or undue influence when she executed the 2018 Will and was "out of the ICU" and in a "better health state" at that time. Miles was not in the room when the 2018 Will was executed. On November 9, 2018, Lisa was discharged from the hospital.

On or around April 24, 2019, Lisa and Miles called Kelly to revise Lisa's testamentary documents. Lisa asked Kelly to remove Linda Sue from her healthcare-proxy form and durable power of attorney as well as remove the outreach-ministry portion of the specific bequest under the life insurance policy.

3

On April 25, 2019, Lisa was arrested for driving while intoxicated. Miles paid Lisa's bail and took Lisa to Conway Behavioral Health rehabilitation facility to be treated for alcoholism. Upon arrival, the facility asked Lisa "if her paperwork was in order," and Miles called Kelly requesting a copy of Lisa's updated will, referred to throughout the pleadings and herein as the "2019 Will."

On April 26, 2019, Kelly emailed Miles the 2019 Will with instructions on executing it. The 2019 Will named Miles as the beneficiary of Lisa's life insurance policy and the primary beneficiary of her residual estate, and it named Charlie Searcy the secondary beneficiary of her residual estate. Miles then forwarded the email to Conway Behavioral Health and allowed Lisa to use his cellphone to call a notary. Lisa executed the 2019 Will at Conway Behavioral Health. However, following the execution of the 2019 Will, Lisa was unable to receive treatment at the facility due to a long waiting list. On April 29, 2019, Lisa voluntarily admitted herself to a program at Drew Memorial Hospital and was discharged three days later.

Following Lisa's discharge from Drew Memorial, she and Miles ended their romantic relationship, and Lisa moved her things out of Miles's home and into a house Miles owned in town. Miles later testified he helped Lisa with several projects to get her "back on her feet," including repairing the storm drain at Lisa's hair salon so she could begin seeing customers again, cleaning the mold out from Lisa's parents' home, and filing an insurance claim from a fire at Lisa's house trailer. During this time, Lisa's brother, Gladden, filed for bankruptcy, and the bankruptcy trustee offered to sell Gladden's interest in three tracts of

4

land that Gladden and Lisa inherited from their parents to Lisa and Miles. On September 27, 2019, Miles extended a $115,000 line of credit to Lisa in exchange for a mortgage on her property so Lisa could buy Gladden's interest.

On July 20, 2020, Miles sent Lisa text messages stating he wished death and illness on her family members and friends. Later that month, Lisa contacted Gill Law Firm and spoke to Amy King, Mr. Gill's secretary, about removing Miles from her will and revoking her power of attorney. Amy took the message for Mr. Gill and later tried to call Lisa back, but Lisa did not answer or return Amy's call. The record shows that prior to the July 2020 phone call, Lisa sent several text messages expressing frustration with Miles and stating she wanted to name Suzie Flemister as her beneficiary instead of Miles.

On November 20, 2020, Gladden and Lisa exchanged a series of text messages that resulted in a verbal altercation and "breakdown in communication." Those messages contained insight into Lisa's thoughts on Linda Sue and Miles. Essentially, Lisa believed that Miles would get everything because Lisa trusted him in error and now, she owned nothing.

On or about November 23, 2020, Lisa went to Miles's office and asked him for a copy of the 2019 Will, which he did not have, claiming Lisa had taken it with her during her move. Together, Lisa and Miles called Gill Law Firm for a copy of Lisa's 2019 Will. Amy King answered the call, later testifying that she had heard both Miles and Lisa on the line. Lisa was unable to find her original 2019 Will and "wanted an original in hand and in a safe place." Due to Lisa and Miles's call taking place right before the Thanksgiving Holiday, Amy

scheduled an appointment for Lisa for November 30 to retrieve the 2019 Will. On that date, Lisa went to Gill Law Firm to re-execute the 2019 Will. While there, Amy asked Lisa if she wanted to make any changes to the 2019 Will, to which Lisa responded she did not. During the meeting, Amy also had Lisa sign a consent judgment for a collection action that Gill Law Firm had filed against Lisa over outstanding invoices. Amy later testified that Lisa's mental and physical condition were "fine" when she re-executed the 2019 Will, referred to in the pleadings and herein as the "2020 Will."

On February 5, 2021, Lisa died on Miles's land due to a self-inflicted gunshot wound. On March 4, Charlie Searcy, the personal representative of Lisa's estate, petitioned to probate the 2020 Will and for appointment as administrator of the estate. Gladden objected to the petition. On May 18, 2021, Charlie moved to withdraw his petition to serve as administrator of the estate, later filing an amended and substituted petition to withdraw. Miles then petitioned to probate the 2020 Will or, in the alternative, the 2019 Will or 2018 Will, and for appointment as administrator of Lisa's estate. Gladden again responded and objected to Miles's petition. On April 19, 2023, the circuit court granted Charlie's motion to withdraw, and the case came for trial on Miles's petition on April 26 and 27, 2023.

On May 22, 2023, the circuit court denied Miles's petition to probate any of Lisa's three wills. The court found the 2019 Will did not meet the statutory requirements for probate because no witnesses were produced who could authenticate the will at trial. The court further found the 2018 and 2020 Wills met the requirements for probate, which shifted the burden to Gladden to prove that Miles was in a confidential relationship with

6

Lisa or that Miles procured the wills. The circuit court ruled Miles was in a confidential relationship with Lisa when she executed the wills, so the burden shifted to Miles to prove by preponderance of the evidence that one or both wills were not a product of undue influence. The circuit court additionally found Miles had procured the wills, so Miles had to prove beyond a reasonable doubt that one or both wills were not a product of undue influence.

The circuit court ultimately ruled Miles failed to prove beyond a reasonable doubt that he did not unduly influence Lisa. The court did not make an alternative finding as to whether there would be undue influence under a preponderance-of-the-evidence standard. The court found Lisa died intestate and named her uncle, Billie Gladden, as the personal representative of her estate.

We review probate matters de novo but will not reverse the circuit court's findings of fact unless they are clearly erroneous. *Shepherd v. Jones*, 2015 Ark. App. 279, at 9, 461 S.W.3d 351, 357. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been committed. *Id.* We must also defer to the superior position of the lower court sitting in a probate matter to weigh the credibility of the witnesses. *Robinson v. Est. of Robinson*, 2016 Ark. App. 130, at 5, 485 S.W.3d 261, 264.

On appeal, Miles argues the circuit court erred in finding he procured and unduly influenced the execution of Lisa's 2018 and 2020 Will. We turn first to the relevant law.

7

A party challenging the validity of a will must usually prove by a preponderance of the evidence that the testator lacked the requisite mental capacity or that the testator was the victim of undue influence when the will was executed; however, there are certain circumstances that will cause the burden to shift to the proponent of the will to disprove undue influence. *Simpson v. Simpson*, 2014 Ark. App. 80, 432 S.W.3d 66. One of those circumstances is when a beneficiary procures the will. *Id.* Procurement of a will requires the actual drafting of the will for the testator or planning the testator's will and causing him to execute it. *Id.* Procurement shifts the burden to the proponent of the will to show beyond a reasonable doubt that the will was not the result of undue influence and that the testator had the mental capacity to make the will. *Id.* Whether a will was procured by undue influence is question of fact for the trier of fact. *Medlock v. Mitchell*, 95 Ark. App. 132, 234 S.W.3d 901 (2006). The existence of a confidential relationship between a primary beneficiary and a testator also gives rise to a rebuttable presumption of undue influence. *Simpson, supra.* Whether two individuals have a confidential relationship is a question of fact. *Medlock, supra.* A confidential relationship arises between a person who holds power of attorney and the grantor of that power. *Id.*

In a case where the mind of the testator is strong and alert, the facts constituting undue influence would be required to be far stronger than a case in which the mind of the testator was impaired, such as by disease or advancing age. *Short v. Stephenson*, 238 Ark. 1048, 386 S.W.2d 501 (1965). Undue influence is defined as "not the legitimate influence which springs from natural affection, but the malign influence which results from fear, coercion,

8

or any other cause that deprives the testator of his free agency in the disposition of his property." *Id.* at 1049, 386 S.W.2d at 501. Undue influence may be inferred from the facts and circumstances of a case, and cases involving questions of undue influence will frequently depend on a determination of witness credibility. *Simpson*, 2014 Ark. App. 80, 432 S.W.3d 66.

## I. *The 2018 Will*

In this case, Miles held power of attorney for Lisa when the 2018 Will was executed. Thus, a confidential relationship existed between Miles, as the primary beneficiary of the will, and Lisa, giving rise to a rebuttable presumption of undue influence. Further, we hold the circuit court's determination that Miles procured the 2018 Will is not clearly erroneous.

Miles obtained a power of attorney for Lisa within hours of her admission to the hospital. After obtaining power of attorney, Miles contacted Kelly to draft a will for Lisa, telling Kelly what the contents of the will should be. Indeed, Miles orchestrated the drafting and execution of Lisa's 2018 Will. Therefore, because Miles procured Lisa's will, a rebuttable presumption of undue influence arose, and Miles had the burden of putting forth evidence to rebut the presumption that Lisa's will was the product of undue influence. Undue influence may be inferred from the facts and circumstances of the case. *Medlock*, *supra.* Here, the circuit court was presented with competing evidence and had to decide which side was more credible. Having considered the evidence and testimony presented at the hearing, discussed above, we cannot say the circuit court was clearly erroneous when it found Miles failed to rebut the presumption of undue influence. We affirm.

9

## II. *The 2020 Will*

The circuit court's order found that Miles had procured the 2020 Will. We disagree. In making its determination, the circuit court noted (1) Lisa contacted Gill Law Firm on July 14, 2020, attempting to remove Miles from her will and revoke her power of attorney in favor of Miles; (2) testimony from Amy King that she was directed to inform Lisa no further work on her will would be completed until she handled a payment issue with Gill Law Firm; (3) Miles sent "negative and discouraging" texts to Lisa on July 20, 2020; (4) Miles contacted Gill Law Firm on November 23, 2020, to arrange for Lisa to re-execute her will; and (5) the circuit court found that Miles had driven Lisa to her appointment to re-execute the will.

*Rose v. Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984), is similar to the instant case. In *Rose*, Mr. Dunn drove the testator to the lawyer's office and participated in the initial discussions concerning making a will. However, the court held the testator had freely and voluntarily executed his own will, and Mr. Dunn did not procure the making of the will. The court relied on the case of *Park v. George*, 282 Ark. 155, 667 S.W.2d 644 (1984), in determining what it means to procure a will, and stated as follows:

In *Park*, an attorney named himself as beneficiary of $10,000 in a will he prepared for an eighty-eight-year-old woman who had been hospitalized and sedated and who appeared confused and upset. In *Rose*, Delma Dunn merely drove Mr. Pierce to the attorney's office and participated in the initial discussions concerning making a will. The court found that Mr. Pierce was possessed of both testamentary capacity and freedom of will. Where a

competent individual freely and voluntarily executes his own will, it cannot be said that another procured the making of that will. *Rose*, 284 Ark. at 47, 679 S.W.2d at 183.

Here, Miles called Gill Law Firm to make the appointment for Lisa and drove her to the appointment. Subsequently, all conversations pertaining to the will and its contents took place between Lisa and her attorney or her attorney's secretary. Miles was not present in the office when the 2020 Will was executed, and the 2020 Will was kept in Gill Law Firm's safe until Lisa's death in 2021. Therefore, we hold the circuit court erred in finding Miles procured the 2020 Will.

While we disagree with the circuit court's determination that Miles procured the 2020 Will, we agree with the court that a confidential relationship existed. However, because the circuit court did not make an alternative finding as to the confidential relationship under the required preponderance-of-the-evidence standard, we cannot properly determine that issue on appeal. Therefore, we reverse the circuit court's order as to the 2020 Will and remand for a determination on whether Miles exerted undue influence on Lisa under a preponderance-of-the-evidence standard.

Affirmed in part; reversed and remanded in part.

ABRAMSON and WOOD, JJ., agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Tory H. Lewis*, *Andrew M. Taylor*, and *Tasha C. Taylor*, for appellant.

*James, House, Swann & Downing, P.A.*, by: *Patrick R. James* and *William JW James*, for appellee.